UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSVALDO RIVERA, an individual, and KIMBERLY DEVOY, an individual, <br><br>Plaintiffs, <br><br>v. <br><br>IC SYSTEMS, INC., and DOES 1-50, <br>Defendants. | Case No.: 16cv1044-JAH (BGS) <br><br>**ORDER:** <br><br>**1. GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT [DOC. NO. 42];** <br><br>**2. DENYING AS MOOT DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [DOC. NO. 27];** <br><br>**3. DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT and;** <br><br>**4. ADOPTING THE MODIFIED TENTATIVE RULING AS THE COURT'S FINAL RULING** |

On December 11, 2017, prior to the scheduled hearing, the Court issued a tentative ruling on Defendant I.C. SYSTEM, INC's ("Defendant) Motion for Summary Judgment, or in the alternative, Partial Summary Judgment, pursuant to Rule 56, FRCP. Having considered the argument of counsel and for the reasons set forth in the Court's Final Ruling, which is attached hereto and incorporated by reference herein, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment or Partial Summary Judgment [Doc. No. 42] is **GRANTED** in part and **DENIED** in part;
2. Defendant's Motion for Judgment on the Pleadings [Doc. No. 27] is **DENIED AS MOOT**;
3. Plaintiffs' request for Partial Summary Judgment pursuant to FRCP Rule 56(f), is **DENIED**.
4. The Modified Tentative Ruling is adopted as this Court's Final Ruling.

DATED: March 26, 2018

Hon. John A. Houston
United States District Judge

# FINAL RULING

**CASE:** *Osvaldo Rivera and Kimberly DeVoy v. IC Systems, Inc.*
16cv1044 JAH (BGS)

**HEARING:** Defendant's Rule 12(c) Motion for Judgment on the Pleadings and Defendant's Rule 56 Motion for Summary Judgment or Alternatively for Partial Summary Judgment

**HEARING DATE: Monday, Dec 11 2017, at 2:30pm**

## ALLEGATIONS IN FIRST AMENDED COMPLAINT:

Plaintiff, Osvaldo Rivera, received a Sprint bill for service charges, reconnection fees after suspension, surcharges, government taxes and fees despite having cancelled service before leaving the reseller's kiosk. The service charges were credited, however, the reconnection fee, surcharges and taxes totaling $39.26 remained. The reconnection fee was hotly disputed by Plainitffs, both with Sprint and the third-party reseller. Despite multiple attempts by Rivera's wife and co-plaintiff, Kimberly DeVoy, to resolve the issue, Sprint sent the account to a collection agency, I.C. System Inc. ("Defendant" or "ICS"). DeVoy spoke with ICS on four occasions. This matter arises out of the collection practices used by ICS in attempting to collect the debt.

Plaintiffs allege that in attempting collection of the debt, Defendant made and used false, deceptive, or misleading representations (§§1692e,1692e(10)) to DeVoy by: (1) misrepresenting the character, amount, or legal status of the debt (§1692e(2)(A)); (2) threatening to report the debt to the credit bureaus when no such action was intended to be taken (§1692e(5)); (3) threatening to share credit information which was known or should be known to be false (§1692e(8)); and (4) using unfair or unconscionable means to collect the debt (§§1692f, §1692f(1)). In addition, Plaintiffs bring two negligence causes of action.

## CAUSES OF ACTION IN FIRST AMENDED COMPLAINT ("FAC")

1. Violations of Cal. Civ. Code §§ 1788 of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act")
2. Violations of Cal. Civ. Code §§ 1788.17 of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act")
3. Violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq ("FDCPA")
4. Negligent Infliction of Emotional Distress ("NIED")
5. Negligent Training and Supervision ("NTS")

1

# FINAL RULING

**RELIEF REQUESTED:**

Defendant requests dismissal of Plaintiffs' FAC in its entirety, or alternatively, in part pursuant to Rule 12(c) and Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). In Plaintiffs' responsive pleading, Plaintiffs move for partial summary judgment pursuant to Rule 56(f), FRCP, alleging a claim under FDCPA §1692c(b) for failure to obtain Rivera's consent prior to communicating with DeVoy about the debt.

**DISCUSSION**

As a preliminary matter, the Court **DENIES** Plaintiffs' motion for partial summary judgment on two grounds: (1) The motion is improperly imbedded in Plaintiffs' response and opposition to Defendant's motion for summary judgment [1]; and (2) Plaintiffs' did not plead a violation of Section 1692c(b) in the FAC.

Second, the Court notes that the parties have had an adequate opportunity to conduct discovery. At this stage, it would be futile for the Court to consider Defendant's Motion for Judgment on the Pleadings and therefore the Court **DENIES** the motion as **MOOT**.

The Court turns its attention to Defendant's motion for summary judgment, or in the alternative, partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").

**MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGEMENT:**

Defendant moves for summary judgment against Rivera for lack of standing and against both Plaintiffs with respect to claims for unfair debt collection practices and negligence.

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial... [T]here can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial…"[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)…

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, (1986). A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." *Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 850 (2001).

---

[1] Under Rule 56(f) it is inappropriate for the Court to consider granting partial summary judgment for the non-movant independent of a motion for leave to file notice and to allow the movant a reasonable time to respond.

# FINAL RULING
**VIOLATIONS UNDER THE FDCPA AND ROSENTHAL ACT**

To establish a violation of the FDCPA, "a plaintiff must plead and prove four elements: (1) the plaintiff is any natural person who is harmed by violations of the FDCPA or is a 'consumer' [for specific causes of action]; (2) the 'debt' arises out of a transaction entered into primarily for personal, family, or household purposes…; (3) the defendant collecting the debt is a 'debt collector'…; and (4) the defendant has violated, by act or omission, a provision of the FDCPA. . . ." *Leasure v. Willmark Communities, Inc.*, 2013 WL 6145536, at *2 (S.D. Cal. Mar. 14, 2013). The relevant provisions of the FDCPA apply under the Rosenthal Act to creditors in California. The analysis, whether under Federal or state law, is identical. *Murphy v. Bronson, Cawley, & Bergmann, LLP*, No., 2011 WL 2413447, at *6 (S.D. Cal. June 13, 2011).

### Rivera's Statutory Standing

Defendant contends Rivera lacks standing to bring suit under the FDCPA because Plaintiffs do not allege ICS made any representations - false, misleading, or otherwise - to Rivera. Defendant concedes that DeVoy may recover for communications directed at her if the communications violated provisions of the FDCPA[2], but argues that Rivera has no standing to bring FDCPA claims for communications or representations made to his wife. In response, Plaintiffs point to Rivera's justifiable reliance on ICS' statements communicated indirectly to him through his wife.

The Ninth Circuit has highlighted "the purpose of the FDCPA is to protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive collection practices (citations omitted). *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938 (9th Cir. 2007). Accordingly, the FDCPA's primary focus is on those communications between the debt collector and the debtor, whether those communications are made directly or indirectly. While Defendant cannot be held liable to each person with whom DeVoy communicated the allegedly misleading or deceptive representation(s), Defendant may be held liable if it targeted Rivera, or if such communications were directed at or intended to reach Rivera. See *Patel v. Seterus, Inc.*, 2015 WL 13547010, at *2 (M.D. Fla. June 19, 2015) (citing in a footnote to *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 936 (9th Cir. 2007)). Relying on *Guerrero*, Defendant asserts that if communications to a consumer's attorney are not actionable under the FDCPA, communications to a consumer's spouse are likewise not actionable.

Defendant's assertion ignores the Ninth Circuit's reasoning. In *Guerrero*, the Ninth Circuit held such communications directed solely or exclusively to the debtor's attorney were not actionable

---
[2] *See Mathis v. Omnium Worldwide*, 2006 WL 1582301, at *5 (D. Or. June 4, 2006) (string citing several district court cases, the 6th Circuit (en banc) and 2nd Circuit finding that debtor's daughter could bring a cause of action under §§ 1692e and 1692f since those specific provisions do not limit relief to "consumers.")

because attorneys don't require the same level of protection as individual debtors. "Attorneys possess exactly the degree of sophistication and legal wherewithal that individual debtors do not... [and when] interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." Id. at 938. This case is distinguishable. Neither Rivera nor DeVoy are assumed to have the legal wherewithal described in *Guerrero* and are precisely the individual debtors the FDCPA was enacted to protect.

Defendant does not dispute that Rivera is the debtor and would also qualify as a "consumer" under specific provisions that limit relief to such persons. Instead, relying on an Eighth Circuit case, *Volden v. Innovative Fin. Sys., Inc*., 440 F.3d 947, 954 (8th Cir. 2006) Defendant contends that no representations were "directed at [Rivera]."

In support of its motion, Defendant submits transcripts and audio recordings of the calls in question. The initial call by ICS was made October 13, 2015. When DeVoy answered, the agent asked to speak with Rivera and was advised he was out of town and unavailable. [Doc. No. 42-13, p.3]. The agent requested an alternate telephone number for Rivera, but was not provided one. Id. The account status was then updated to "Cease" with the reason indicated as "Wrong Number." [Doc. No. 42-6, p.13].

On January 6, 2016, Defendant received two inbound calls from DeVoy. On the second (and third) call, after receiving a reference number, Defendant's agent questioned whether the person with whom they were speaking was Osvaldo Rivera. [Doc. No. 42-14, p.3; Doc. No 42-15, p.3]. DeVoy explained that Rivera was her husband, the actions they had taken to resolve the issue, and how upset her husband would be if the debt appeared on his credit report. After suggesting a course of action Devoy could take, the second agent stated "it sounds like *you guys* have been [trying to resolve the dispute] over the past year." [Doc. No. 42-14, p.6]. The subject of the conversation transitioned into credit reporting timeframes, methods of disputing the debt, the possibility of payment and subsequent credit or reimbursement. Before agreeing to provide DeVoy with the phone number of Sprint's fraud department, the second agent stated, "it sounds like the service was still trying to--*you guys* didn't authorize that." [Doc. No. 42-14, p 9].

On Jan 20th, 2016 the account status reflected a change from "Payment Arrangement by mail" to "Broken Payment." [Doc. No. 42-6,p.11]. On January 26th, ICS called and requested to speak with Rivera. [Doc. No. 42-16, p.3]. After being advised Rivera was not available and confirming Plaintiffs' address, ICS agreed to speak with DeVoy about the account. The agent stated she was

calling to get the account out of collections. [Doc. No. 42-16, p.3]. DeVoy advised that no payment would be made and that an attorney had been contacted. The agent encouraged resolution of the dispute and informed DeVoy of the approximate date for reporting.

Although ICS never spoke directly with Rivera, the evidence would allow a reasonable trier of fact to find ICS intended to communicate with both DeVoy and Rivera. *See Brazier v. Law Offices of Mitchell N. Kay*, P.C., 2009 WL 764161, at *2 (M.D. Fla. Mar. 19, 2009)(finding a genuine dispute of fact as to whether the language in a letter was intended for the consumer herself, care of her attorney.) The Court finds a genuine issue of material fact as to whether Defendant intended to reach or directed communication at Rivera through his wife. Defendant's motion for summary judgment as to Rivera, based on his lack of standing, is **DENIED**.

**Third Cause of Action: Violations of the Fair Debt Collection Practices Act**

**§1692e(2)(A): Misrepresentation of the Debt**

Defendant contends Sprint represented to ICS that there was a valid balance of $39.26 on Rivera's account and provided ICS with an unpaid invoice supporting the debt. Plaintiffs assert that DeVoy informed ICS the debt "was not owed" and by not validating the debt, ICS is in violation of 1692e(2)(A).

The Court follows the holding in *Clark v. Capital Credit & Collection Svcs*., Inc., 460 F.3d 1162, 1174 (9th Cir. 2006). "[I]f a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors. On the other hand, the bona fide error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable or who represents to the consumer a debt amount that is different from the creditor's report." Here, ICS' reliance on Sprint's invoice was not unreasonable, despite the consumer's verbal dispute. Although a debt collector must implement fair collection practices, its contractual obligation is to the client, not the consumer. Absent *written* notice of a dispute per §1692g (b), ICS is not obligated to provide validation of the debt to the consumer, nor is it required to cease collection activity.

No written notice of the dispute was submitted by Plaintiffs. The parties do not dispute that Sprint reported the debt to ICS in the amount of $39.26 and ICS attempted to collect that amount and no more. The Court need not determine whether Sprint erred[3] in reporting the debt.

---

[3] Even if Sprint reported the amount in error, this Court agrees with the 6th Circuit in *Smith v. Transworld Systems, Inc*., 953 F.2d 1025, 1032 (6th Cir.1992) finding no violation when the creditor lists the incorrect amount owed in the referral to the collection agency.

# FINAL RULING

Accordingly, there is no genuine issue of material fact as to whether ICS misrepresented the character, amount, or legal status of the disputed debt. Defendant's motion for summary judgment is **GRANTED** with respect to claims under FDCPA §1692e(2)(A) within the THIRD cause of action, and the corresponding claims under state law in the FIRST and SECOND causes of action.

### §1692e(5): Threatening Action Not Intended to be Taken

ICS contends that it simply "inform[ed] DeVoy that the Sprint account *could be* reported to the credit bureaus and that its statements did not constitute a threat to take action …not intended to be taken in violation of Section 1692e(5). Although the second agent stated that credit reporting "*could still be a possibility*," and provided an approximate date of when the credit reporting was due, the evidence presents a genuine dispute. Transcripts and recorded audio submitted by Defendant indicate the third agent made more definitive statements: "*It's going to be submitted* to your credit report around the 23rd of January" [Doc. No. 42-15, p.5] and "if there is a balance…and if you are disputing, it *will* still be on your credit report." [Doc. No. 42-15, p.5]. The Court finds that the least sophisticated debtor would consider such language to be a threat, especially after expressing a heightened concern about the potential effects of reporting the debt.

However, whether the debt collector harbored an intent to carry out the action threatened is material to determining whether a violation under §1692e(5) occurred. *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1150 (S.D. Cal. 2007), aff'd, 660 F.3d 1055 (9th Cir. 2011). Plaintiff alleges that ICS' intention to report the debt changed after being informed of the dispute and attorney involvement. ICS was informed that Plaintiffs had an attorney for the first time on January 26th during a follow-up call to collect payment. On this call, the fourth agent encouraged DeVoy to resolve the matter with Sprint because the credit report due date was approaching. [Doc. No. 42-16, p 4]. Although alluded to, the fourth agent did not make a statement threatening to take action. The "threatening statements" were made by the third agent prior to ICS learning of the lawyer's involvement, but after being informed of the dispute.

The Court finds a genuine issue of fact as to whether ICS intended to report the debt at the time the threatening statements were made by the third agent. Defendant's motion for summary judgment is **DENIED** with respect to claims under FDCPA §1692e(5) in the THIRD cause of action, and the corresponding claims under the Rosenthal Act in the FIRST and SECOND causes of action.

# FINAL RULING
## §1692e(8): Threatening to Share False Credit Information

Defendant's statements did not constitute a threat to communicate false credit information in violation of Section 1692e(8). The debt was verbally disputed. The Plaintiffs were unsuccessful in resolving the issue with the third party reseller or Sprint. Sprint forwarded the debt to ICS for collection. Reporting or threatening to report a disputed debt to credit bureaus does not equate to reporting false information. The *See* §1681s-2(a)(3). The Court finds no genuine issue of material fact. Defendant's motion for summary judgment is **GRANTED** with respect to claims under FDCPA §1692e(8) within the THIRD cause of action, and the corresponding claims under the Rosenthal Act in the FIRST and SECOND causes of action.

## §§1692e and 1692e (10): Use of False Deceptive or Misleading Representations

Defendant also argues that none of the statements made in the attempt to collect were false, deceptive, or misleading. Making or using misleading representations to collect a debt violates §§1692e and 1692e (10). Defendant does not dispute that warnings were made in an effort to collect payment. Instead, Defendant contends that the statements were informative, and neither deceptive nor misleading. Such a determination hinges on Defendant's intent. As discussed above, a genuine issue of material fact exists as to whether ICS intended to report the debt to the credit bureaus when statements warning of such action were made. Defendant's motion for summary judgment is **DENIED** with respect to claims under FDCPA §§ 1692e and 1692e (10) in the THIRD cause of action, and the corresponding claims under state law in the FIRST and SECOND causes of action.

## §§1692f and 1692f (1): Use of Unfair Means to Collect the Debt

Section 1692f is a safety-net provision prohibiting conduct not otherwise covered by the FDCPA. Plaintiffs' allegations that ICS used unfair and unconscionable means to collect the debt are based on the same facts underlying the claim that ICS made false, deceptive, or misleading statements under §1692e and therefore are insufficient to state a separate claim for relief. Defendant's motion for summary judgment is **GRANTED** with respect to claims under FDCPA §§ 1692f and 1692f (1) in the THIRD cause of action, and the corresponding claims under state law in the FIRST and SECOND causes of action.

### Bona Fide Error Defense

In the alternative, ICS contends that even if a violation occurred, it would not be liable under any cause of action due to its assertion of the bona fide error defense. To establish a defense under this provision, a debt collector must establish that the violation: 1) was unintentional; 2) was the result of a bona fide error; and 3) occurred even though the collector maintained procedures reasonably adapted to check for and avoid such errors. 15 U.S.C. § 1692k(c); *Jerman v. Carlisle,*

*McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 573 (2010). Under the bona fide error defense, the term "intentional" has been defined as "voluntary, deliberate acts and omissions." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1166–67 (7th Cir. 1974)*; see also Baker v. G. C. Servs. Corp.,* 677 F.2d 775, 779 (9th Cir. 1982) (noting that § 1692k(c) is identical to the Truth in Lending Act (TILA)).

Plaintiffs argue the FDCPA as a strict liability statute most often applied to errors of a clerical nature. Relying on an Arizona district court case, Plaintiffs contend that in order for ICS to avail itself of this particular defense, it must first clearly articulate what errors were made and the specific procedures in place to prevent that error. In *Boatley v. Diem Corp.*, Defendant did not have procedures in place to prevent violations and instead offered its affiliation with other organizations as a method of "'keep[ing] abreast' of industry practices and changes in the law.[4]" 2004 WL 5315892, at *7 (D. Ariz. Mar. 24, 2004). Although ICS did not list in its motion each possible error and the specific procedure in place to prevent it, Defendant provided evidence of particular procedures in place to prevent each violation alleged in Plaintiffs' complaint.

Although Defendant presents evidence of maintaining reasonable policies and procedures to avoid violations, simply having such policies in place will not preclude liability for the intentional, voluntary, or deliberate acts of its agents. "The principal is liable for the acts and negligence of the agent in the course of his [or her] employment, although [the employer] did not authorize or did not know of the acts complained of." *Meyer v. Holley,* 537 U.S. 280, 286 (2003) (citing *New Orleans, M., & C.R. Co. v. Hanning*, 15 Wall. 649, 657, (1873)). The Court finds a genuine issue of material fact as to whether Defendant mistakenly or unintentionally warned Plaintiff that an action would be taken adverse to Plaintiff's interest. *See Jerman*, 559 U.S. 573, 594–95 (concluding that the bona fide error defense does not necessarily cover every provision of the FDCPA.) Defendant's motion for summary judgment is **DENIED**.

**Fourth Cause of Action: Negligent Infliction of Emotional Distress (NIED)**

The tort claim for NIED requires Plaintiffs to plead sufficient facts to meet the traditional negligence elements of duty, breach of duty, causation, and damages. *Fernandez v. United States*, 2012 WL 202775, at *4 (S.D. Cal. Jan. 23, 2012) (citing *Potter v. Firestone Tire & Rubber Co.* 6 Cal.4th 965, 984 (1993)). A duty of care is owed to the plaintiff when it is "assumed by the defendant or imposed on the defendant as a matter of law, or [when it] arises out of a relationship

---

[4] In *Boatley*, 2004 WL 5315892, at *7, the district court denied Defendants' motion for summary judgment on the ground that even if Defendants' error had been based on a mistake about the law, it would still not be excused by the bona fide error defense.

# FINAL RULING

between the two. (Citations omitted)." *Chaconas v. JP Morgan Chase Bank*, 713 F. Supp. 2d 1180, 1186 (S.D. Cal. 2010).

The debtor/debt-collector relationship is not one which creates a duty as a matter of law. *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 991 (N.D. Cal. 2014). Plaintiff contends, however, that a violation of a statute establishes the requisite standard of care in a negligence action. Defendant asserts that purported unfair debt collection practices, without more, do not suffice to create a common law duty of care. Courts have repeatedly found allegations under the FDCPA and RFDCPA are insufficient to state "the type of duty that California courts would find sufficient to state a claim for negligent infliction of emotional distress," unless the violation threatens physical injury. *Varando*, 43 F. Supp. 3d at 991 (quoting *Chaconas*, 713 F. Supp. 2d at 1187); *Inzerillo v. Green Tree Servicing LLC*, 2014 WL 1347175, at *6 (N.D. Cal. Apr. 3, 2014)(same); *See also Miranda v. Field Asset Servs.*,2013 WL 3283701, at *5 (S.D.Cal. June 27, 2013 (recognizing that absent a special relationship, recovery is rarely available for emotional distress unless malice, breach of a fiduciary duty, physical injury, or some other unusually extreme or outrageous circumstance, can be shown). In general, Plaintiffs must support a claim of mental distress with some "guarantee of genuineness" to meet the general standard of proof required. *Potter*, 6 Cal. 4th at 988.

Rivera's deposition indicates he suffered a loss of sleep, arguments with his wife and intense frustration. The Court finds the evidence of insomnia, arguments, and frustration experienced by Rivera do not meet the requirements of physical injury and are insufficient to support a state law[5] claim for NIED.

DeVoy offers deposition testimony that she was also stressed. She testified that her fear of the debt being reported "caused a lot of stress with – also like my hashimoto issues …I have a lot of…stomach issues where I go and I can throw up." [Doc. No. 64-8; p. 21-36; Pls. Ex: E p.75]. The Court finds DeVoy's stomach pain constitutes physical injury sufficient to allege a NIED claim, and to create a genuine issue of material fact. Accordingly, Defendant's motion for summary judgment is **GRANTED** as to Plaintiff Rivera and **DENIED** as to Plaintiff DeVoy.

---

[5] The FDCPA adopts a less stringent standard than state tort law. It does not require a plaintiff to satisfy the state law elements of intentional or negligent infliction of emotional distress to recover actual damages for emotional distress under 15 U.S.C. § 1692k(a). "Plaintiffs are not required to prove state law tort elements to be compensated for their emotional distress." *Panahiasl v. Gurney*, 2007 WL 738642, at *2 (N.D. Cal. Mar. 8, 2007)

# FINAL RULING
**Fifth Cause of Action: Negligent Training and Supervision (NTS)**

Defendant moves for summary judgment with respect to Plaintiffs' claim for NTS on two basis: (1) ICS owes no duty of care to Plaintiffs and (2) ICS has a comprehensive training and ongoing education program for its collectors. A debt collection agency has a general duty to refrain from hiring or retaining employees who are unfit or incapable of collecting debts in compliance with [federal and state law]. *See Doe v. Capital Cities*, 50 Cal.App. 4th 1038, 1054 (1996)). When an employee is negligently trained, it stands to reason that the employee may be unfit to carry out the duties of his or her job. *Inzerillo*, 2014 WL 1347175, at *7.

After conducting discovery, Plaintiffs' allege that ICS does not have policies or procedures in place for consumers who claim the debt is not owed and that ICS "teach[es] their employees to violate the law." Assuming arguendo, Plaintiffs alleged sufficient facts to survive judgment on the pleadings, the allegation that ICS employs inadequate policies and procedures is demonstrably refuted by evidence of ICS' extensive, FDCPA-compliant training program: including new hire training, on-the-floor development training, semi-annual and yearly knowledge reviews, and advanced training opportunities. [Doc. No. 53, pg 2; Defs. Ex: 4].The training materials contain detailed procedures for handling disputes and debts consumers claim are not owed. [Doc. No. 56, pp.35-39, 42, 48; Defs Ex: 7]. Plaintiffs assert no facts or basis for Defendant to question the fitness or capacity of the agents speaking with DeVoy. *See Doe v. Capital Cities,* 50 Cal. App. at 1054 (requiring liability to be based upon facts that the employer knew or should have known that hiring [or retaining] the employee created a particular risk.) The Court finds no genuine issue of material fact exists. Defendant's motion for summary judgment is **GRANTED** as to the NTS cause of action.

**RULING:**

1. Defendant's Motion for Summary Judgment or Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**:
    a. Defendant's Motion for Summary Judgment as to Rivera based on lack of standing is **DENIED**.
    b. The Court **DENIES** Defendant's Motion for Summary Judgment as to:
        i. Plaintiffs' claims under FDCPA §§1692e (5), 1692e, and 1692e (10) within the THIRD cause of Action, and corresponding claims under the Rosenthal Act within the FIRST and SECOND causes of Action.
        ii. Defendant's affirmative defense under the Bona Fide Error Defense.

# FINAL RULING

      iii. Plaintiff DeVoy's claim for Negligent Infliction of Emotional Distress.

  c. The Court **GRANTS** Defendant's Motion for Summary Judgment as to:

      i. Plaintiffs' claims under FDCPA §§ 1692e(2),1692e(8),1692f, 1692 f(1) in the THIRD cause of action and the corresponding claims under the Rosenthal Act in the FIRST and SECOND causes of action;

      ii. Plaintiff Rivera's claim for Negligent Infliction of Emotional Distress.

      iii. Plaintiffs' FIFTH cause of action for Negligent Training and Supervision.

2. Defendant's Motion for Judgment on the Pleadings is **DENIED AS MOOT.**
3. Plaintiffs' request for Partial Summary Judgment pursuant to Rule 56(f) is **DENIED**.